575 F.2d 655
 98 L.R.R.M. (BNA) 2438, 83 Lab.Cas. P 10,586
 CAPITAL CITY TELEPHONE COMPANY, Appellant,
v.
COMMUNICATION WORKERS OF AMERICA, AFL-CIO, LOCAL NO. 6301,
Communication Workers of America, AFL-CIO, Local
No. 6314, and Communication Workers of
America, AFL-CIO, Appellees.
 No. 77-1990.
 United States Court of Appeals,
Eighth Circuit.
 Submitted April 14, 1978.
Decided May 8, 1978.
 
 Arlyn D. Haxton, Kansas City, Mo., for appellant; Joseph L. Hiersteiner, Dietrich, Davis, Dicus, Rowlands & Schmitt, Kansas City, Mo., on brief.
 C. David Whipple, Whipple, Eisler & Kraft, P. C., Kansas City, Mo., for appellees; Charles V. Koons, Kane & Koons, Washington, D. C., on brief.
 Before HEANEY and STEPHENSON, Circuit Judges, and WANGELIN,* District Judge.
 STEPHENSON, Circuit Judge.
 
 
 1
 Capital City Telephone Company (Capital) appeals from the district court's[1] order of November 18, 1977, affirming the award of an arbitrator. On this Appeal Capital contends that the district court erred in deferring the issue of compensatory damages to arbitration. We affirm.
 
 
 2
 Capital is a corporation primarily engaged in providing telephone service to the public, in or affecting interstate commerce. On July 30, 1971, Capital entered into a collective bargaining agreement with the Communication Workers of America and Locals Nos. 6301 and 6314 of the Communication Workers of America (defendants). The agreement provided for wages, hours and other working conditions for Capital's employees in the bargaining units represented by the defendants. The agreement contained a "no strike no lockout" provision, which stated as follows:
 
 
 3
 The parties agree that the public utility operations upon which the employees covered by this Agreement are engaged, are essential to the public welfare and recognize their obligations to furnish continuous public service. Accordingly, the Company agrees that during the term of this Agreement or extension thereof there shall be no lockouts of the members of the Union. The Union on its part agrees there shall be no strikes, walk-outs, slowdowns, or cessations of work during the term of this Agreement.
 
 
 4
 In addition to the "no strike no lockout" provision, the agreement also contained an article entitled "Grievance and Arbitration" which established an arbitration procedure. According to the agreement, the arbitration decision and awards were to be "final, conclusive and binding upon all parties."
 
 
 5
 On October 12, 1973, members of Local No. 2, International Brotherhood of Electrical Workers, AFL-CIO, commenced a lawful strike against Capital and established a lawful picket line at its facilities in Jefferson City, Missouri. Employees of Capital who were members of Local No. 6301 and Local No. 6314 refused to cross the picket line established by Local No. 2, and report to work. On December 4, 1973, Capital brought the instant action against the defendants pursuant to 29 U.S.C. § 185(a), alleging that defendants breached the collective bargaining agreement between the parties by refusing to cross the picket line of striking members of another union. Capital sought an injunction restraining defendants from continuing the work stoppage and money damages for the breach of the "no strike" provision of the collective bargaining agreement.
 
 
 6
 On December 26, 1973, Capital filed a motion for a temporary restraining order and preliminary injunction pending arbitration of the dispute. The district court declined to grant injunctive relief,[2] and deferred the issues of breach of contract and compensatory damages to arbitration.
 
 
 7
 On January 31, 1974, the arbitrator rendered his decision that the "refusal of bargaining unit members to cross the IBEW picket line is a violation of the no-strike clause of the collective bargaining agreement of the parties." On February 12, 1974, Capital withdrew its motion for temporary restraining order because the arbitrator's action had rendered it moot. The arbitration proceeding on the issue of damages for breach of contract was held on June 7, 1976. On December 31, 1976, the arbitrator rendered his decision that "the claim for damages against the Union is denied." The district court affirmed the arbitrator's award and this appeal by Capital followed.
 
 
 8
 Capital's principal contention is that the district court erred in confirming the arbitrator's decision on the compensatory damage issue. More specifically, Capital argues that it was not contractually required to submit the issue of damages for breach of the no-strike clause to arbitration. According to Capital, the district court should have conducted a trial on the damage issue rather than deferring it to arbitration. Capital asks this court to reverse the decision of the district court confirming the arbitrator's award and remand for a trial on the merits of its damage claim.
 
 
 9
 Arbitration is a matter of contract and a party is bound by an award only if he agrees to submit the issue to arbitration. Gateway Coal Co. v. United Mine Workers, 414 U.S. 368, 374, 94 S.Ct. 629, 38 L.Ed.2d 583 (1974). In reviewing a collective bargaining agreement this court has observed that "(a) grievance under a particular collective bargaining agreement is deemed arbitrable 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.' United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409, 1417 (1960)." General Drivers Local 120 v. Sears, Roebuck & Co., 535 F.2d 1072, 1075 (8th Cir. 1976).
 
 
 10
 The district court properly noted that in several filings before it, Capital expressed its willingness to submit all disputes to arbitration. For example, shortly after Capital brought the instant action against the defendants pursuant to 29 U.S.C. § 185(a), it sought a temporary restraining order and preliminary injunction.[3] In its attempt to secure the preliminary injunction, Capital stated to the district court in its motion that the "plaintiff and defendant Unions have a collective bargaining agreement between themselves which provides that work stoppages shall not occur during the life of the said agreement, and that any grievances or disputes between the parties are subject to a grievance procedure and arbitration in lieu of a strike or work stoppage." (Emphasis added.) Similarly, in its suggestions in support of the preliminary injunction, Capital urged the district court to compel the defendants "to enter into the arbitration process instead of maintaining the work stoppage." Furthermore, in a hearing memorandum dated January 16, 1974, in the arbitration proceeding, Capital stated that the parties had agreed to arbitrate the question of contract interpretation. Finally, after the arbitrator had found that the defendants had breached the contract, Capital stated in a post-hearing brief of December 31, 1976, to the arbitrator, that "(a)lthough the Union has not objected to the jurisdiction of the Arbitrator to make a damage award, there can be no doubt that such jurisdiction is inherently vested in this Arbitrator." In our opinion these filings by Capital prohibit us from saying with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Although a doubt may exist, it will be resolved in favor of coverage.
 
 
 11
 Even more damaging to Capital's position, however, is a stipulation entered into by Capital and the defendants and filed with the district court on April 19, 1974. This stipulation followed the arbitrator's initial finding that the refusal of the defendants' members to cross the picket line of another union was a violation of the no-strike clause of the collective bargaining agreement. The stipulation filed on April 19 provided that "the parties have agreed to submit the remaining issues (damages) to arbitration consistent with the arbitration procedure set forth in the collective bargaining agreement between the plaintiff and the Union herein."
 
 
 12
 Capital argues that this stipulation was merely a means of informing the district court that the parties were proceeding on the course already ordered by the court. However, our reading of the stipulation convinces us otherwise. We find no language used in the stipulation to indicate that Capital was proceeding to arbitration on the damage issue under protest or solely because the court had so ordered.[4] In clear, unambiguous language the stipulation states that "the parties have agreed to submit the remaining issues to arbitration." In similar fashion, Capital and the defendants stated to the district court in a filing entitled "Suggestions in Support of Motion for Order Extending Date for Completion of Discovery" that "(t)he parties propose to now submit the remaining issues (damages) to the same arbitrator at a time and place consistent with the convenience of said arbitrator." Assuming arguendo that the original collective bargaining agreement did not provide for arbitration of the damage issue, we are persuaded that the parties nevertheless independently agreed to submit this issue to arbitration. See International Brotherhood of Teamsters Local 117 v. Washington Employers, Inc., 557 F.2d 1345, 1349-50 (9th Cir. 1977); Ficek v. Southern Pacific Co., 338 F.2d 665, 656-57 (9th Cir. 1964), cert. denied, 380 U.S. 988, 85 S.Ct. 1362, 14 L.Ed.2d 280 (1965); Amicizia Societa Navegazione v. Chilean Nitrate and Iodine Sales Corp., 274 F.2d 805, 809 (2d Cir.), cert. denied, 363 U.S. 843, 80 S.Ct. 1612, 4 L.Ed.2d 1727 (1960).
 
 
 13
 The district court's decision refusing to vacate the arbitrator's award is affirmed.
 
 
 14
 Affirmed.
 
 
 
 *
 The Honorable H. Kenneth Wangelin, United States District Judge for the Eastern District of Missouri, sitting by designation
 
 
 [1]
 The Honorable John W. Oliver, Chief Judge, United States District Court for the Western District of Missouri
 
 
 [2]
 Capital does not contest on this appeal the denial of injunctive relief
 
 
 [3]
 The prerequisites for obtaining a preliminary injunction under these circumstances were enunciated in Boys Markets, Inc. v. Retail Clerks Local 770, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970). As this court has recently stated:
 Boys Markets and later cases authorize the issuance of an injunction when (1) the union is engaged in a strike or other violation of a "no strike" clause of a collective-bargaining agreement, if (2) the violation was precipitated by a dispute between the parties, which dispute is (3) subject to mandatory grievance or arbitration procedures provided for in the agreement, and (4) issuance of the injunction is otherwise warranted under ordinary principles of equity.
 National Rejectors Industries v. United Steelworkers, 562 F.2d 1069, 1075 (8th Cir. 1977).
 
 
 [4]
 Our review of the record does not reveal one instance of protest by Capital concerning the arbitration of the damage issue until after the arbitrator had held adversely to the plaintiff