**KANSAS CITY POWER & LIGHT COMPANY, Plaintiff,**

v.

**LOCAL NO. 1464, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, Defendant.**

No. 75–CV–653–W–2–5.

United States District Court, W. D. Missouri, W. D.

Jan. 14, 1981.

**1152**

Jack Whitacre, Spencer, Fane, Britt & Browne, Kansas City, Mo., for plaintiff.

William A. Jolley, Jolley, Moran, Walsh, Hager & Gordon, Kansas City, Mo., for defendant.

## OPINION AND ORDER

SCOTT O. WRIGHT, District Judge.

This is a declaratory judgment action brought by plaintiff Kansas City Power & Light Company (hereinafter "the Company") pursuant to § 301 of the National Labor Relations Act, as amended, 29 U.S.C. § 185. Plaintiff seeks a declaratory judgment that defendant Local No. 1464, International Brotherhood of Electrical Workers (hereinafter "the Union"), by virtue of certain actions taken against three of the Company's supervisory employees, violated a strike settlement agreement entered into by the parties in September, 1974. Defendant Union has filed a counterclaim seeking a declaratory judgment that this dispute falls within the grievance and arbitration provisions of the parties' collective bargaining agreement and that plaintiff is required by that agreement to submit this matter to arbitration.

Plaintiff and defendant both have indicated that the facts of this case are essentially undisputed. Accordingly, by agreement of the parties, and with the consent of the Court, it was determined that a formal hearing or trial would not be necessary in this case and that this matter would be submitted to the Court for final adjudication based on a stipulation of facts jointly tendered by the parties and accompanied by uncontested documents and exhibits.[1] Further, each side has submitted both an original brief and a reply brief in support of their respective position.

### I.

Preliminarily, the Court notes that under 29 U.S.C. § 185 the Court has jurisdiction over the subject matter and the parties to this case without regard to the amount in controversy or the citizenship of the parties. Plaintiff, a corporation organized and existing pursuant to the laws of the State of Missouri with its principal offices located in Kansas City, Jackson County, Missouri, is an employer engaged in commerce and affecting commerce within the meaning of 29 U.S.C. § 185. Defendant, a local union affiliated with the International Brotherhood of Electrical Workers, with its principal offices located in Kansas City, Jackson County, Missouri, is a labor organization representing employees in an industry affecting commerce within the meaning of 29 U.S.C. § 185.

Defendant Union has been certified by the National Labor Relations Board (NLRB) as the exclusive bargaining representative for certain employees of the Kansas City Power & Light Company and, in February, 1973, entered into a collective

---

1. At the time this procedure was agreed upon, this case was assigned to the Honorable William R. Collinson, Presiding Judge of Division No. 2 of the Western Division of the Western District of Missouri. Some time later, and after this case was fully briefed and ready for disposition, this action was transferred to Division No. 5 and the undersigned District Judge for all further proceedings. The procedure previously adopted by the parties and Judge Collinson is perfectly acceptable to this Court.

bargaining agreement with the Company.[2] This agreement contained a "wage reopener provision" which provided as follows:

Either party may open this Agreement on June 30, 1973, and June 30, 1974, for the sole purpose of a general upward or downward revision in wage rates, vacations and holidays; but any such proposed revision should relate only to a general wage increase or decrease, and shall not be available for adjustments in wage rates for individual employees or job classifications or for changes in fringe benefits other than vacations and holidays. The party desiring such revision shall notify the other party in writing of the desired revision not later than sixty calendar days prior to June 30, 1973, and June 30, 1974, whereupon the revision so requested shall be promptly considered by the duly accredited representatives of the Union and the duly accredited representatives of the Company in joint session. Should the parties be unable to agree upon the revision desired or the effective date thereof after all reasonable efforts so to do by July 1, 1973 or July 1, 1974, the provisions of Article XIV shall no longer be applicable.

Pursuant to the foregoing provision, the Union notified the Company in April, 1974 of its intent to reopen their collective bargaining agreement and negotiate the areas specified in the wage reopener provision. Although negotiations took place, the parties were unable to reach an agreement on the contract areas reopened and, on July 8, 1974, the employees represented by the Union initiated an economic strike against the Company in support of their contract demands.[3] This strike continued until the latter part of September, 1974. On September 24, 1974, the parties entered into a tentative agreement to settle the strike subject to ratification by the Union members. A majority of the members of the Union subsequently ratified the tentative agreement,[4] and on September 30, 1974, representatives of the Union and the Company formally executed a document entitled "Supplemental Agreement." This agreement sets forth the revisions to the collective bargaining agreement which had been agreed upon by the parties in settling the strike.[5] As pertinent to this case, the settlement agreement provided that:

7. All charges, including Unfair Labor Practice charges, will be withdrawn by both the Company and the Union and there will be no reprisals by either party.

Shortly after the strike ended, certain members of the Union filed written charges against three supervisory employees of the Company alleging that these employees had violated the constitution of the International Brotherhood of Electrical Workers (IBEW) and the bylaws of Local 1464. Specifically, these individuals were charged with working for the company and crossing picket lines established by the Union during the recently concluded strike. At the time the strike originally commenced, there were approximately 115 persons employed by the Company in supervisory positions who were affiliated with the Union by way of either an "honorary withdrawal" or a "participating withdrawal" membership.[6] The Com-

---

2. Other employees of the Company, not represented by Local 1464, are represented by one of two other local unions certified by the NLRB to represent separate bargaining units. During February and March, 1973, the Company also entered into separate collective bargaining agreements with each of these unions.

3. Pursuant to similar provisions in their collective bargaining agreements, the other unions representing Company employees, Locals 1613 and 412, also reopened their agreements in April, 1973. Negotiations concerning these agreements were likewise unsuccessful and the members of these unions joined the members of Local 1464 in engaging in an economic strike beginning on July 8, 1974.

4. The tentative agreement provided in part that "[a]ll charges on either side will be withdrawn and there will be no reprisals by either side."

5. Similar "Supplemental Agreements" were executed by the Company and Locals 1613 and 412 after their respective memberships ratified the tentative agreement.

6. Upon being promoted to a supervisory position, a Company employee could not remain a regular member of the Union's bargaining unit.

pany continued to operate during the strike and supervisory personnel were required to perform work which normally would have been performed by members of the striking Union. In order to accomplish these tasks, the supervisory employees routinely crossed the Union's picket lines. However, with the exception of the three supervisors named in the charges, all other supervisory employees resigned their membership or affiliation with the Union at the inception of the strike.[7]

A hearing regarding the charges brought against the three supervisors was held by the Trial Board of the Union, and fines of $3,600 each were levied against two of the supervisors and a $2,400 fine against the third. The supervisors refused to pay these fines, contending that the Union's action constitutes a reprisal for the supervisors' activities during the strike and that such reprisals are prohibited by the strike settlement agreement. To date, although the fines remain unpaid, the Union has not taken any action to collect the fines. But the Union has adopted the position that the supervisors are "members in arrears" as defined in the IBEW constitution, and as such, have lost all rights and privileges of IBEW membership, including, but not limited to, certain pension benefits, right of admission to a local IBEW union, rights in the IBEW death benefit fund and the right to either a participating or honorary withdrawal card.[8]

As a result of the action taken against the supervisors by the Union, the instant lawsuit was filed. Plaintiff seeks to have the Court declare that the Union's disciplinary action violates the "no reprisal" provision of the parties' strike settlement agreement. Defendant asserts, however, both by way of an affirmative defense to plaintiff's complaint and as a counterclaim for declaratory judgment, that the question of whether the Union violated the "no reprisal" agreement is a matter which must be submitted to arbitration. And, although plaintiff disputes the "arbitrability" of the reprisal issue, even plaintiff concedes that if the Court should determine that this is a subject encompassed by the arbitration provision of the parties' collective bargaining agreement, the Court is precluded from addressing the merits of plaintiff's claim. Thus, the Court's role at this juncture in the case is limited; the Court's initial task is to determine whether this dispute is a mandatory subject for arbitration under the parties' collective bargaining contract. *See Ben Gutman Truck Service, Inc. v. Teamsters Local No. 600*, 484 F.Supp. 893, 895 (E.D.Mo.1980).

## II.

■ The principles of law governing the duty to arbitrate labor disputes are well-established. The duty to arbitrate does not arise simply as a matter of law and "a party cannot be compelled to arbitrate any matter in the absence of a contractual obligation to do so." *Nolde Brothers, Inc. v. Local No. 358*, 430 U.S. 243, 250–51, 97 S.Ct. 1067, 1071, 51 L.Ed.2d 300 (1977). *Accord, Gateway Coal Co. v. United Mine Workers*, 414 U.S. 368, 374, 94 S.Ct. 629, 635, 38 L.Ed.2d 583 (1974); *Atkinson v. Sinclair Refining Co.*, 370 U.S. 238, 241, 82 S.Ct. 1318, 1320–1321, 8 L.Ed.2d 462 (1962). Assuming, however, that the parties' collective bargaining agreement contains an arbi-

---

Supervisory employees could, however, take either a "participating withdrawal" or "honorary withdrawal" membership from the Union. Under a participating withdrawal membership, the employee could remain eligible for certain union benefits, including pension benefits, by continuing to make dues and other payments to the IBEW. An honorary withdrawal membership did not entitle the employee to remain eligible for union benefits. Under either type of withdrawal membership, the employee had the right to return to active membership if he ceased to be a supervisor.

7. Two of the supervisors, Jerry Monks and Donald Cranford, had participating withdrawal memberships in the Union. The third supervisor, Edward VanCompernolle, had an honorary withdrawal membership in the Union.

8. In addition, until these fines are paid, the Union will refuse to accept dues payments tendered by the "members in arrears."

tration provision, then the question of whether a party is "bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the Court on the basis of the contract entered into by the parties." *Atkinson v. Sinclair Refining Co., supra,* 370 U.S. at 241, 82 S.Ct. at 1320.

■ In determining the arbitrability of a particular issue, "a court must be ever mindful of the strong national policy favoring arbitration of labor disputes." *Rochdale Village, Inc. v. Public Service Employees Union,* 605 F.2d 1290, 1294 (2d Cir. 1979). Moreover, because Congress has declared that arbitration is the preferred method of settling labor disputes, *see* § 203(d) of the Labor-Management Relations Act, 29 U.S.C. § 173(d), the Supreme Court has stated that a grievance arising under a collective bargaining agreement providing for arbitration must be deemed arbitrable "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960). Consistent with these principles, the Eighth Circuit has held, in *Kansas City Royals Baseball Corp. v. Major League Baseball Players Association,* 532 F.2d 615, 620–21 (8th Cir. 1976), that

> a broad arbitration provision may be deemed to exclude a particular grievance in only two instances: (1) where the collective bargaining agreement contains an express provision clearly excluding the grievance involved from arbitration; or (2) where the agreement contains an ambiguous exclusionary provision and the record evinces the most forceful evidence of a purpose to exclude the grievance from arbitration.

*See also Capital City Telephone Co. v. Communication Workers of America,* 575 F.2d 655, 657 (8th Cir. 1978).

The arbitration clause of the collective bargaining agreement entered into by Kansas City Power & Light Company and Local No. 1464 provides as follows:

> Any question or dispute regarding interpretation or application of any provision of this Agreement which cannot be adjusted by negotiation and conferences between the respective representatives of the Company and the Union, or by resort to the grievance procedure provided for herein where individual grievances are involved, shall be submitted to and settled by arbitration as hereinafter provided.

Obviously the foregoing arbitration provision is quite broad. It encompasses "[a]ny question or dispute regarding interpretation or application of any provision" of the collective bargaining agreement[9] and, on its face, would appear to be applicable to the present dispute, *i. e.,* the determination of whether the Union violated the "no reprisal" agreement would appear to be an arbitrable issue. Nonetheless, the Company vigorously contends that arbitration should not be ordered.

The basic thrust of plaintiff's argument is that there is no indication that the arbitration clause was intended to govern the reprisal provision of the strike settlement agreement. Plaintiff points out that the arbitration clause states that it pertains to "any question or dispute regarding . . . *this Agreement,*" i. e., the collective bargaining agreement. (emphasis added) Plaintiff, therefore, submits that the arbitration clause is limited to disputes involving the original collective bargaining agreement and that disputes arising under the settle-

---

9. Ordinarily, this would end the Court's inquiry. As stated in *Rochdale Village, Inc. v. Public Service Employees Union,* 605 F.2d 1290, 1295 (2d Cir. 1979),

> If the court finds that the parties have agreed to submit to arbitration disputes "of any nature or character," or simply "any and all disputes," all questions will be properly

consigned to the arbitrator: "With that finding the court will have exhausted its function, except to order the reluctant party to arbitration." *United Steelworkers of America v. American Manufacturing Co.,* 363 U.S. 564, 571, 80 S.Ct. 1363, 1364, 4 L.Ed.2d 1403 (1960) (Brennan, J., concurring).

ment agreement are not subject to arbitration. Plaintiff additionally supports this argument by asserting that because strikes and strike settlement agreements are infrequent and unusual occurrences, a settlement agreement is *sui generis* and outside the scope of the typical arbitration clause. The Court, however, does not find plaintiff's argument convincing.

Although admittedly the settlement agreement was not, nor could it have been, contemplated by the original collective bargaining agreement, at the time the parties executed the settlement agreement, they incorporated it into their collective bargaining agreement. The preamble of the settlement agreement states as follows:

> Pursuant to the provisions of Article II, Section 2(a) of the Collective Bargaining Agreement effective July 1, 1972 (the "Agreement"), the undersigned do hereby agree to amend and supplement the Agreement in the following respects:

This explicit reference to the existing collective bargaining agreement constitutes persuasive evidence that the settlement agreement was intended to be an integral part of the original agreement and subject to the provisions thereof. A similar conclusion was reached in *Westinghouse Broadcasting Co. v. Local 804*, 616 F.2d 97 (3d Cir. 1980). At issue in that case was whether a dispute between the union and the employer over a provision in their pension plan was subject to arbitration under their collective bargaining agreement. In holding that the dispute was arbitrable, the Court stated:

> Examination of the collective bargaining agreement discloses that other agreements and understandings were incorporated therein by reference.... Faced

with this array of interrelated agreements, plans and provisions, we cannot say "with positive assurance," *United Steelworkers*, 363 U.S. at 582, 80 S.Ct. at 1353, that the arbitration [clause] is not susceptible of an interpretation that covers the asserted dispute. Because doubts as to arbitrability must be resolved in favor of arbitration, we conclude that the grievance was a proper subject for arbitration.

*Westinghouse Broadcasting Co. v. Local 804, supra*, 616 F.2d at 100–01.

■ Likewise, in the case at hand, the Court cannot say with "positive assurance" that the controversy surrounding the breach *vel non* of the "no reprisal" agreement is a non-arbitrable dispute. Moreover, had the parties included a provision prohibiting reprisals by either side (in the event of a strike) in the original collective bargaining agreement, any question or dispute concerning this provision clearly would have been subject to arbitration. By specifically stating that the provisions of the settlement agreement "amend and supplement" their collective bargaining agreement, the parties accomplished the same result. Thus, the Court concludes that the determination of whether the Union violated its reprisal agreement is a proper subject for arbitration based on the contract entered into by the parties.[10] *Atkinson v. Sinclair Refining Co., supra*, 370 U.S. at 241, 82 S.Ct. at 1320.

Briefly, the Court notes that the Company's *sui generis* argument also lacks merit. A similar contention was raised in *Gateway Coal Co. v. United Mine Workers*, 414 U.S. 368, 94 S.Ct. 629, 38 L.Ed.2d 583 (1974). In that case the lower court had held that a

---

**10.** It is also worthwhile to note that the "no reprisal" clause of the strike settlement agreement is the only provision which the Company contends is not subject to arbitration under the collective bargaining agreement. The Company has stipulated that if a dispute over any other part of the settlement agreement had developed, such dispute "would [have been] subject to the grievance and arbitration provisions of the collective bargaining agreement." ¶ 48, Joint Stipulation of the Parties. The Company's concession that arbitration would be appropriate for all other aspects of the settlement agreement seems inconsistent with its position regarding the arbitrability of the reprisal issue. *Cf. Capital City Telephone Co. v. Communication Workers of America*, 575 F.2d 655, 658 (8th Cir. 1978) (company argued that district court erred in referring to arbitration union's liability for breach of no-strike clause; appellate court found that stipulation stating that parties agreed to submit all remaining issues to arbitration was "damaging" to company's position).

dispute over safety conditions at a coal mine was not a matter entitled to the presumption of arbitrability. Specifically, the court found that for reasons of public policy safety disputes should be treated as *sui generis* and outside the purview of the normal arbitration agreement. On appeal, however, the Supreme Court reversed, expressly finding that arbitration was the preferred method for resolving even such matters as safety disputes. After reviewing its prior decisions, and the congressional declarations concerning the strong federal policy favoring arbitration of labor disputes, the Court concluded that "the 'presumption of arbitrability' announced in the *Steelworkers* trilogy applies to safety disputes, and that the dispute in the instant case is covered by the arbitration clause in the parties' collective bargaining agreement." *Id.* 414 U.S. at 379–80, 94 S.Ct. at 638.

The "presumption of arbitrability" is even stronger in this case than in *Gateway Coal.* In *Gateway Coal* there were arguably strong public policy justifications for the lower court's refusal to order arbitration. *See Gateway Coal Co. v. United Mine Workers, supra, Id.* 414 U.S. at 378, 94 S.Ct. at 636 n. 8. But despite these public policy considerations, the Supreme Court still held that arbitration was the preferred method for resolving the controversy over safety conditions. And, unlike *Gateway Coal,* no public policy arguments can be made here that would even "arguably" overcome the strong presumption of arbitrability. Thus, even assuming that a strike settlement agreement is unique, the Court finds that the present dispute is nevertheless a proper subject for arbitration.[11]

III.

In accordance with the foregoing opinion and order, the Court finds and declares: First, that a collective bargaining agreement was executed by the parties herein and was in full force and effect during all times relevant to the issues raised in plaintiff's complaint; second, that said agreement contains grievance and arbitration provisions designed to resolve by voluntary means disputes arising between plaintiff and defendant; third, that the matters raised in plaintiff's complaint fall within the grievance and arbitration provisions of the parties' collective bargaining agreement; and fourth, that plaintiff is required to utilize the procedures set forth in the collective bargaining agreement, including arbitration, to resolve the matters raised in plaintiff's complaint. Accordingly, it is hereby

ORDERED that judgment be, and is hereby, entered in favor of defendant Local No. 1464 and against plaintiff Kansas City Power & Light Company on plaintiff's complaint for declaratory judgment. It is further

ORDERED that judgment be, and is hereby, entered in favor of defendant Local No. 1464 and against plaintiff Kansas City Power & Light Company on defendant's counterclaim for declaratory judgment. Each party to bear its own costs.

---

11. The Company also advances the argument that the arbitration procedures prescribed by the collective bargaining agreement "work in only one direction" because they are primarily geared toward the resolution of employee grievances. The Company thus asserts that there is "no provision in the collective bargaining agreement for the processing of grievances filed by the Company." The Court, however, does not construe the arbitration provision as narrowly as the Company suggests. The arbitration clause in question provides that "[a]ny question or dispute regarding ... any provision of this Agreement ..., *or* ... where individual grievances are involved, shall be submitted to and settled by arbitration...." The language of this provision makes it clear that arbitration is not limited solely to individual employee grievances, but rather arbitration is also appropriate for disputes concerning the scope or coverage of the agreement itself.