TOOTSIE ROLL INDUSTRIES, INC.,
Plaintiff–Appellee,

v.

LOCAL UNION NO. 1, BAKERY, CONFECTIONERY AND TOBACCO WORKERS' INTERNATIONAL UNION, Defendant–Appellant.

No. 86–2532.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 10, 1987.

Decided Oct. 8, 1987.

Rehearing and Rehearing En Banc
Denied Nov. 2, 1987.

Mark Stein, Cornfield & Feldman, Chicago, Ill., for defendant-appellant.

Gerald A. Golden, Seyfarth Shaw Fairweather & Geraldson, Chicago, Ill., for plaintiff-appellee.

Before COFFEY and MANION, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

COFFEY, Circuit Judge.

Defendant-appellant Local Union No. 1, Bakery, Confectionery and Tobacco Workers' International Union ("the Union") appeals the order of the district court vacating an arbitrator's decision directing Tootsie Roll Industries to reinstate a discharged employee. We affirm.

I.

Tootsie Roll fired employee Rosie Fikes, a member of the Union, in 1983 for excessive absenteeism. Fikes filed a grievance protesting the discharge, and the grievance was set for arbitration pursuant to the Union's collective bargaining agreement with Tootsie Roll. Before the arbitration hearing was held, however, the union president and Tootsie Roll's director of human resources settled the dispute through a "last chance" letter agreement which provided, in part:

"Effective October 29, 1984, Tootsie Roll Industries, Inc. will reinstate Rosie Fikes, but without any back pay for the period since she was terminated on May 9, 1983. Mrs. Fikes' reinstatement shall be on a 'last chance' basis whereunder she will be required to maintain an acceptable attandance [sic] level and will be terminated in the event she is absent, for any reason whatsoever including illness, more than one day per month for the first six months following her reinstatement. In the event Mrs. Fikes fails to meet this level of attendance, she will be terminated and the Union waives any right to file or pursue a grievance or other claim on her behalf."

On the date the last chance letter agreement was executed, Fikes was employed elsewhere. She informed Tootsie Roll that she wanted to give her current employer one week's notice before leaving, and Tootsie Roll consented. Fikes returned to work at Tootsie Roll on November 5, 1984.

Thereafter, Fikes missed work on January 9, March 5, April 16, and May 2, 1985. Her April 16 absence resulted from car problems, Fikes's only means of transportation, and the May 2 absence was due to her husband's illness. Nonetheless Tootsie Roll determined that the last two absences had occurred within a one-month period during Fikes's six-month probation term and terminated Fikes's employment for violating the terms of the last chance letter agreement.

On May 14, the Union submitted a grievance on Fikes's behalf. The Union contended that, according to the agreement, Fikes's six-month probationary period began to run on October 29 and thus her May 2 absence did not fall within the agreement's time limit. In addition, the Union argued that Fikes's absences on April 16 and May 2 did not violate the requirement that she not be absent "more than one day per month" because the word "month" meant calendar month, and not any rolling thirty-day period. Finally, the Union claimed that Fikes's last two absences were beyond her control and excusable under Tootsie Roll's personnel policy.

The grievance proceeded to arbitration, and Arbitrator David Dolnick held that Fikes's six-month probation period began to run on the date she actually returned to work (November 5). Consequently both the April 26 and May 2 absences took place within "the first six months following her reinstatement" and thus occurred during the probationary period. In interpreting the phrase "more than one day per month," the arbitrator noted the ambiguity in the term and looked to Tootsie Roll's regular attendance policy for guidance. According to that policy, the term "month" implied a thirty-day rolling period, rather than a cal-

endar month. As such, Fikes's April 16 and May 2 absences occurred within the same thirty-day period, though not within the same calendar month, in violation of the letter agreement's attendance requirements.

The arbitrator nevertheless ruled against Tootsie Roll. He speculated that all facets of Tootsie Roll's absenteeism policy, which excused absences under certain extenuating circumstances, also applied to the letter agreement's terms. The arbitrator held that such circumstances existed as to both the April 16 and May 2 absences, and he ordered Fikes reinstated at Tootsie Roll.

The district court vacated the arbitrator's award on the ground that it did not "draw its essence from the agreement." The court reasoned that the letter agreement contained two ambiguous phrases (i.e., "more than one day per month" and "six months following her reinstatement") that the arbitrator might properly interpret. The court held, however, that the arbitrator's blanket application of Tootsie Roll's regular, more lenient absenteeism policy contradicted the clear and unambiguous language in the agreement that Fikes would be discharged if she was absent for any reason whatsoever during the probation period. Because Tootsie Roll's general absenteeism policy was not applicable to Fikes's special employment conditions under the letter agreement, the district court concluded that the arbitrator's award was in flat disregard of the agreement's terms and therefore should be vacated.

## II.

In *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960), the Supreme Court set forth the applicable standard of review for arbitration awards, stating:

"[A]n arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement.

When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award."

*Id.* at 597, 80 S.Ct. at 1361. In *Randall v. Lodge No. 1076, International Association of Machinists & Aerospace Workers, AFL–CIO*, 648 F.2d 462 (7th Cir.1981), this court stated that "the arbitrator's decision should not be upset unless it is arbitrary or capricious or fails to draw its essence from the collective bargaining contract because it exceeds the confines of interpreting and applying the contract." *Id.* at 465. In *Amoco Oil Co. v. Oil, Chemical & Atomic Workers International Union, Local 7-1, Inc.*, 548 F.2d 1288 (7th Cir.), *cert. denied*, 431 U.S. 905, 97 S.Ct. 1697, 52 L.Ed.2d 389 (1977), we stated, "An arbitrator's award does 'draw its essence from the collective bargaining agreement' so long as the interpretation can in some rational manner be derived from the agreement, 'viewed in the light of its language, its context, and any other indicia of the parties' intention....' " *Id.* at 1294 (quoting *Ludwig Honold Mfg. Co. v. Fletcher*, 405 F.2d 1123, 1128 (3d Cir.1969)). We further stated in *Ethyl Corp. v. United Steelworkers of America, AFL–CIO–CLC*, 768 F.2d 180 (7th Cir. 1985), *cert. denied*, 475 U.S. 1010, 106 S.Ct. 1184, 89 L.Ed.2d 300 (1986), that "[i]t is only when the arbitrator *must* have based his award on some body of thought, or feeling, or policy, or law that is outside the contract ... that the award can be said not to 'draw its essence from the collective bargaining agreement.' " *Id.* at 184–85 (emphasis in original).

In the present case, the Union and Tootsie Roll agree that the arbitrator was interpreting the contract when he construed the two ambiguous phrases in light of Tootsie Roll's regular attendance policy, and neither party contends that the arbitrator's interpretation of these phrases is incorrect. We agree with the district court's finding that the arbitrator's conclusion that all aspects of Tootsie Roll's regular attendance policy must apply to the last chance agreement does not draw its essence from the agreement. We are convinced that in us-

ing the general attendance policy to find Fikes's absences excusable, the arbitrator based his award on a policy outside the letter agreement. In fact, if the parties had intended the regular policy to apply, there would have been no reason for spelling out the very specific attendance requirements contained in the letter agreement and they would have written such language into the contract with specificity had they so intended. The effect of the arbitrator's conclusion was to eliminate the agreement's provision that Fikes would be terminated if she was absent "for any reason whatsoever." Thus, the district court properly refused to enforce the arbitrator's award because he failed to follow the clear requirements of the agreement. *See Young Radiator Co. v. International Union, U.A.W.,* 734 F.2d 321 (7th Cir.1984).

The Union submits that the arbitrator was merely reading the "law of the shop," or the body of past practices between the parties, to interpret an ambiguous contract provision as including Tootsie Roll's general absenteeism policy. While reliance on the law of the shop is appropriate to interpret ambiguous contract terms, such as the definition of "month" and the duration of the probationary period in the case at hand, the law of the shop cannot be relied upon to modify clear and unambiguous provisions. As this court explained in *Chicago Web Printing Pressmen's Union, No. 7 v. Chicago Newspaper Publishers' Association,* 772 F.2d 384 (7th Cir.1985):

> "To place past practice on a par with the parties' written agreement would 'create the anomaly that, while the parties expend great energy and time in negotiating the details of the Agreement, they unknowingly and unintentionally commit themselves to unstated and perhaps more important matters which in the future may be found to have been past practice.' ... Thus, once a past practice is established, it is not always enforced by arbitrators to the same extent as contractual terms, ... and may be modified or eliminated by the employer where the underlying basis for the practice has changed."

*Id.* at 387–88 (citing Elkouri & Elkouri, *How Arbitration Works,* 400–01 (3d ed. 1976)). Here, the clause stating that Fikes would be discharged if she was absent for any reason whatsoever is unambiguous and a deliberate modification of the general absenteeism policy by the parties. Even though we believe this term is very harsh and might even be termed as unreasonable, the parties agreed to it and the contract is exactly what it purports to be—a "last chance" agreement. Hence, the arbitrator inappropriately applied the law of the shop to this phrase to alter its clear meaning and impact.

Finally, Tootsie Roll and the Union disagree on whether Fikes's dispute was arbitrable in light of the agreement's provision that "[i]n the event Mrs. Fikes fails to meet this level of attendance, she will be terminated and the Union waives any right to file or pursue a grievance or other claim on her behalf." The Union admits in its brief, however, that if Tootsie Roll is correct on the merits of the dispute, then Fikes's grievance is not arbitrable. In other words, if the court concludes that Fikes failed to meet the prescribed level of attendance, then arbitration is waived. Again, the language of the agreement is clear and unambiguous, and since the parties agreed to it, they are bound by it. Because we agree with the district court's finding that Fikes violated the attendance requirements of the agreement, the waiver clause of the agreement renders Fikes's grievance not arbitrable.

The Union argues that the district court improperly ruled on the merits of Fikes's claim before determining whether the dispute was arbitrable, in violation of *AT & T Technologies, Inc. v. Communications Workers of America,* 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). In *AT & T Technologies,* the Supreme Court held that it was the district court's duty to determine arbitrability, and not the arbitrator's. *Id.,* 106 S.Ct. at 1418. The Court stated:

> "It is the court's duty to interpret the agreement and to determine whether the parties intended to arbitrate grievances.... If the court determined that

the agreement so provides, then it is for the arbitrator to determine the relative merits of the parties' substantive interpretations of the agreement. It was for the court, not the arbitrator, to decide in the first instance whether the dispute was to be resolved through arbitration."

*Id.* at 1420. Therefore, the district court's determination that Fikes's absences violated the last chance agreement and that the discharge was not arbitrable was consistent with its duty as defined by *AT & T Technologies* to determine whether the parties intended to submit Fikes's dispute to arbitration. Accordingly, the judgment of the district court vacating the arbitrator's award is

AFFIRMED.