**FRANKLIN ELECTRIC CO.,**
**Plaintiff–Appellant,**

v.

**INTERNATIONAL UNION, UNITED AUTOMOBILE AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA (UAW); Local No. 1000, Defendants–Appellees.**

**No. 88–2715.**

United States Court of Appeals,
Eighth Circuit.

Submitted April 12, 1989.

Decided Sept. 22, 1989.

James P. Fenton, Ft. Wayne, Ind., for plaintiff-appellant.

Shereen Arent, Little Rock, Ark., for defendants-appellees.

Before ARNOLD and MAGILL, Circuit Judges, and PECK,* Senior Circuit Judge.

JOHN W. PECK, Senior Circuit Judge.

In this case we are asked to review the award of an arbitrator in a dispute over insurance benefits to laid off employees. Appellant Franklin Electric Co. ("Franklin Electric") appeals the decision of the district court dismissing its suit to vacate the arbitration award in favor of Appellees, the International Union, United Automobile Aerospace and Agricultural Implement Workers of America and its Local No. 1000

---

* The HONORABLE JOHN W. PECK, Senior Circuit Judge for the United States Court of Appeals for the Sixth Circuit, sitting by designation.

(collectively, "the Union") on summary judgment.

During June 1986, Franklin Electric gave notice to its employees that it was closing its Jacksonville, Arkansas plant. At that time and through April 23, 1988, Franklin Electric was bound to a collective bargaining agreement ("CBA") with the Union. The CBA provided a grievance and an arbitration procedure by which the parties intended to "provide contractual means for the orderly settlement of all grievances." CBA, art. 7.1. The CBA also provided: "A grievance means an alleged violation of this Agreement * * * Complaints of a general nature may be filed in to Step 2 of the grievance procedure. However, such general complaints may only be processed through the fourth step and shall not be subject to arbitration." CBA, arts. 5.1 and 5.1.1. After announcement of the pending closure, both parties met to discuss the effects of that closure on the bargaining unit ("effects bargaining"). By letter August 15, 1986, the Union reported to the local membership the outcome of the meeting, advising that "[m]edical and life insurance benefits will be continued, and paid for by [Franklin Electric], through the month of September 1986, for all employees on the payroll as of August 1, 1986." Agreement was reached between the parties and confirmed in an exchange of letters dated August 26 and September 3, 1986, neither of which mentioned the group insurance benefits.

On September 26, 1986, Franklin Electric notified the laid off employees that they had passed the 120 day extension of benefits required under the laws of Arkansas and advised them their insurance would lapse unless they paid premiums by October 3, 1986. The laid off employees were also advised their group insurance would terminate at the end of October, at which time they could participate in a direct pay policy through Blue Cross–Blue Shield. On October 28, 1986, the Union wrote to Franklin Electric that it continued to oppose the termination of group medical and life insurance policies for the laid off employees. The Union filed a grievance pursuant to the CBA on December 12, 1986

and a charge with the National Labor Relations Board ("the Board") on April 20, 1987, claiming Franklin Electric refused to bargain on these issues. The Board referred the matter on May 20, 1987 to arbitration.

The arbitration was held on October 28, 1987, at which both parties were represented by their attorneys. Franklin Electric presented arguments that the arbitrator lacked jurisdiction to hear the dispute since the issue was not one of contract interpretation, but of good faith participation in effects bargaining and since the CBA definition of an arbitrable grievance does not contemplate the nature of this dispute. Franklin Electric also argued the issue was not arbitrable and that it was not obligated to provide group insurance benefits to employees for the remainder of the term of the CBA or to pay premiums for employees on Workers' Compensation. The arbitrator entered his award sustaining the Union's grievance on November 30, 1987, on the grounds he did have jurisdiction to decide the issue of arbitrability, the issue was arbitrable, and Franklin Electric was bound by "past practice" to maintain group insurance coverage for laid off employees.

On December 23, 1987, Franklin Electric filed suit in district court, seeking to vacate the arbitration award. The Union filed a counterclaim for enforcement of the award and a motion for summary judgment, to which Franklin Electric responded by filing a cross-motion for summary judgment and a motion to dismiss the counterclaim. On September 30, 1988, after hearing oral argument on the motions, the district court granted the Union's motion for summary judgment and denied Franklin Electric's motion. At the Union's motion, the district court modified its November 3, 1988 judgment to order Franklin Electric to comply with the arbitrator's award.

## DISCUSSION

### 1. Arbitrability

█ It is a well settled principle of labor law that arbitration and the related question of arbitrability are "matter[s] of con-

tract" between the parties. *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960). A party that has not agreed to cannot be forced to submit a dispute to arbitration for resolution. *Id.* The general rule is that arbitrability, whether a "reluctant party has breached his promise to arbitrate," is for judicial determination and not arbitration. *See Warrior & Gulf*, 363 U.S. at 582, 80 S.Ct. at 1352 (deriving authority from section 301 of the Labor Management Relations Act). Franklin Electric argues on appeal that the district court erred in ordering enforcement of the arbitrator's award because the issue was not arbitrable. Franklin Electric argues the district court improperly deferred to the arbitrator that the issue was not a "complaint of a general nature" within the meaning of the CBA and hence, was arbitrable, when the arbitrator lacked jurisdiction to make such a determination in the first place.

■ Appellant's arbitrability argument actually encompasses two separate questions. The first question involves whether the arbitrator had the jurisdiction to decide the arbitrability of the contested issue. The second question concerns whether the issue is in fact arbitrable. Because arbitration is rooted in the agreement of the parties, they may agree to submit arbitrability questions to arbitration in addition to the merits of a dispute. *Cf. Warrior & Gulf Co.*, 363 U.S. at 583 n. 7, 80 S.Ct. at 1353 n. 7 (parties must show clear purpose to exclude arbitrability question from the court). There is growing consensus in the circuits, including this one, that the parties may impliedly consent, outside the express terms of the CBA, to arbitration. *See Capital City Telephone Co. v. Communication Workers of America, Local No. 6301*, 575 F.2d 655, 658 (8th Cir.1978) ("Assuming arguendo that the original collective bargaining agreement did not provide for arbitration of the damage issue, we are persuaded that the parties nevertheless independently agreed to submit this issue to arbitration."); *see also Johnson v. United Food and Commercial*

*Workers, Local No. 23*, 828 F.2d 961, 964–65 (3d Cir.1987) (parties submitted arbitrability issue to arbitrator outside collective bargaining agreement); *Jones Dairy Farm v. Local No. P–1236, United Food and Commercial Workers International Union*, 760 F.2d 173, 175–76 (7th Cir.1985) ("If a party voluntarily and unreservedly submits an issue to arbitration, he cannot later argue that the arbitrator had no authority to resolve it."); *Local 369, Utility Workers Union of America v. Boston Edison Co.*, 752 F.2d 1, 3 (1st Cir.1984) (where parties submit arbitrability question to the arbitrator, decision entitled to same deference otherwise given arbitrator's award); *Piggly Wiggly Operators' Warehouse, Inc. v. Piggly Wiggly Operators' Warehouse Independent Truck Drivers Union, Local No. 1*, 611 F.2d 580, 583–84 (5th Cir.1980) (arbitrability issue may be submitted to arbitrator if clearly contemplated by parties); *George Day Construction Co. v. United Brotherhood of Carpenters and Joiners of America, Local No. 354*, 722 F.2d 1471, 1475 (9th Cir.1977) (parties' consent to submit arbitrability question to arbitrator may be implied from submission). Consent to arbitrate may be implied from the parties' conduct. *International Brotherhood of Teamsters, Local 117 v. Washington Employers, Inc.*, 557 F.2d 1345, 1350 (9th Cir. 1977) (cited with approval in *Capital City Telephone Co.*, 575 F.2d at 658).

■ In *George Day, supra*, the Ninth Circuit clarified the nature of conduct from which a purpose to arbitrate the entire issue may be implied: arguing before the arbitrator not only the merits of a dispute, but also the question of arbitrability without expressly reserving the arbitrability determination for judicial resolution. 722 F.2d at 1475. The Ninth Circuit suggested Franklin Electric could also have refused to arbitrate at all, thereby forcing the Union to petition the district court to compel arbitration on the grounds of section 301 of the Act, or sought declaratory and injunctive relief prior to the commencement of arbitration. *George Day*, 722 F.2d at 1476 (acknowledged and distinguished in *Chauffeurs, Teamsters and Helpers, Local Union 238 v. C.R.S.T.*, 795 F.2d 1400, 1404 n.

3 (8th Cir.1986)). Any of the three alternatives would have produced the same result; the district court would have made the initial arbitrability decision. Here, although the record is clear it objected to the arbitrator's jurisdiction to decide the arbitrability question, Franklin Electric proceeded to argue the issue to the arbitrator without expressly reserving the issue for initial judicial resolution. By their conduct the parties granted the arbitrator the jurisdiction to decide their arbitrability question and "in effect empowered him to decide" those issues. *Piggly Wiggly Cperators' Warehouse,* 611 F.2d at 584. Neither party can later be heard to argue the arbitrator had no authority to decide the issues submitted. *See, e.g., Johnson,* 828 F.2d at 965; *Jones Dairy Farm,* 760 F.2d at 175; *Piggly Wiggly Operators' Warehouse,* 611 F.2d at 584.

■ Once an issue is properly before the arbitrator, the standard of judicial review for the decision is deferential: if the award "draws its essence from the collective bargaining agreement," then it must be enforced. *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593 at 597, 80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424 (1960). This deferential standard applies equally to an arbitrator's award arising not merely out of a collective bargaining agreement, but also from the parties independent submission of questions ordinarily resolved by the courts. *George Day,* 722 F.2d at 1477. Because we cannot say the arbitrator's decision did not take its essence from the parties' agreement, we hold the district court correctly upheld the arbitrator's decision to reach the merits of the issue.

Because we are deciding Appellant's joint jurisdictional and arbitrability questions based on their voluntary submission to the arbitrator, we will not reach its extensive arguments concerning the limited scope of the CBA. The breadth of the arbitration clause, the problems of delving into effects bargaining subjects, and the procedural versus substantive arbitrability distinctions are irrelevant, where, as here, the parties have consented independently to arbitration. As we noted before, arbitrability is a matter of contract and here both parties by their conduct agreed to arbitrate this issue. A party against whom the award was issued cannot now declare it does not wish to be bound by the arbitrator's decision. *See, e.g., Jones Dairy Farm,* 760 F.2d at 175–76.

## 2. The Award

■ The second issue on which Franklin Electric appeals is the award itself. Franklin Electric argues the award is unenforceable because it fails to draw its essence from the CBA. Appellant urges the arbitrator exceeded his contractual authority by relying on past practice and ignoring express provisions of the CBA to reach his conclusion. The Supreme Court has consistently reaffirmed the principle of judicial deference to arbitral awards. *See, e.g., United Paperworkers International Union v. Misco, Inc.,* 484 U.S. 29, 108 S.Ct. 364, 370, 98 L.Ed.2d 286 (1987); *AT & T Technologies, Inc. v. Communications Workers of America,* 475 U.S. 643, 649–50, 106 S.Ct. 1415, 1418–19, 89 L.Ed.2d 648 (1986); *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 599, 80 S.Ct. 1358, 1362, 4 L.Ed.2d 1424 (1960). A court may not review the merits of an arbitrator's award, even where the parties believe it is based on erroneous findings of fact or misinterpretations of the CBA. *Misco,* 108 S.Ct. at 370. The standard of judicial review for an arbitrator's award is: Whether the award " 'draws its essence from the collective bargaining agreement,' and is not merely '[the arbitrator's] own brand of industrial justice.' " *Id.* (quoting *Enterprise Wheel & Car Corp.,* 363 U.S. at 597, 80 S.Ct. at 1361). Insofar as it draws its essence from the agreement of the parties, the award must be enforced. An award that exceeds the contractual authority of the arbitrator, however, fails to "draw its essence from the agreement and must be vacated, despite the usual deference given to arbitrator's awards." *Centralab, Inc. v. Local No. 816, International Union of Electrical, Radio and Machine Workers of*

*America*, 827 F.2d 1210, 1217 (8th Cir. 1987).

Franklin Electric argues the arbitrator exceeded his authority by relying on past practice over the express terms of the CBA to award the Union the insurance benefits for the laid off employees. There are three CBA provisions which Appellant cites as support for his contention that the arbitrator exceeded his contractual authority. The CBA specifies the employees eligible for group insurance benefits: those employees who have acquired seniority and who are actively employed or on an approved leave of absence. CBA, art. 25.1. An approved leave of absence is one for a personal illness or injury, for a personal leave of absence, for military service, to take an office in the Union, or to attend any Union function as a delegate. CBA, art. 24.1. Finally, the CBA declares "[t]he Arbitrator shall limit his decision and award to the grievance submitted and he shall not have authority to add to or subtract from or modify any terms of the Agreement." CBA, art. 6.3. Franklin Electric contends the arbitrator's decision to award the laid off employees insurance benefits, even though they are neither actively employed nor on an approved leave of absence, but based on the company's past practice of providing employees on layoff with group insurance coverage conflicts with the express terms of the CBA.

■ Appellant's contention here is without merit. First, the district court correctly concluded that the very CBA which Franklin Electric claims forbids use of past practice actually contemplates its use. The CBA provides: "This Agreement shall be applied and interpreted as worded: past practices in existence prior to April 29, 1976 shall not apply or be considered in determining its meaning, its interpretation or its application, or in determining the rights of any employee." CBA, art. 6.4. While the meaning of this provision is clear to us, we also acknowledge that the duty to interpret the CBA is that of the arbitrator and not the court. Even if we disagreed with the arbitrator's interpretation, so long as his interpretation took its essence from the CBA, we would be bound to enforce it. *Misco*, 108 S.Ct. at 370.

Franklin Electric tries to analogize this case to *Tootsie Roll Industries v. Local Union No. 1, Bakery, Confectionery and Tobacco Workers*, 832 F.2d 81 (7th Cir. 1987). In *Tootsie Roll Industries*, the Seventh Circuit held that an arbitrator could not use past practice to modify the unambiguous terms of a contract. *Tootsie Roll Industries, supra*, involved a special letter agreement written in settlement of a dispute prior to arbitration for an individual who was discharged for excessive absenteeism. The letter provided she would be reinstated on a "last chance" basis, but would be "terminated in the event she [was] absent, for any reason whatsoever including illness, more than one day per month for the first six months following her reinstatement." *Tootsie Roll Industries*, 832 F.2d at 82. The grievant subsequently missed work on January 9, March 5, April 16, and May 2, 1985 and was soon thereafter discharged. The matter went to arbitration and the arbitrator ordered the grievant reinstated based on the company's attendance policy and its past application of that policy. The district court vacated the arbitrator's award, and the court of appeals affirmed, because the arbitrator's award failed to draw its essence from the letter agreement. *Id.*, 832 F.2d at 82–3, 85. *Tootsie Roll Industries, supra*, is inapposite to this case. Unlike the facts of *Tootsie Roll Industries*, where there was a special letter agreement dealing specifically and unambiguously with one situation, here the terms of the CBA are not entirely unambiguous as they are intended to deal with all situations that arise during the employment relationship including layoffs. Because the CBA provisions are reasonably susceptible of the interpretation the arbitrator has drawn and because the CBA clearly contemplated a situation such as this layoff at articles 10 and 11, we hold the arbitrator properly considered past practice to interpret the CBA.

Furthermore, contrary to Franklin Electric's intimation, basic arbitration policy is enhanced, not contravened by this arbitrator's reference to past practice. As the

Supreme Court noted in *Warrior & Gulf, supra,*

> [t]he labor arbitrator's source of law is not confined to the express provisions of the contract, as the industrial common law—the practices of the industry and the shop—is equally a part of the collective bargaining agreement although not expressed in it. The labor arbitrator is usually chosen because of the parties' confidence in his knowledge of the common law of the shop and their trust in his personal judgment to bring to bear considerations which are not expressed in the contract as criteria for judgment.

363 U.S. at 581–82, 80 S.Ct. at 1352–53. We conclude the district court did not err in upholding the arbitrator's use of past practice to determine the employees on layoff were entitled to insurance benefits.

 Franklin Electric also argues the district court erred in upholding the arbitrator's award in light of his previous finding of fact that the parties had settled the issue of insurance benefits during their effects bargaining. Appellant argues the arbitrator may not second guess the discretion of the parties under the guise of construing ambiguous contract language. *Manhattan Coffee Co. v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local No. 688,* 743 F.2d 621, 623 (8th Cir. 1984) (citing *Timken Co. v. Local Union No. 1123, United Steelworkers of America,* 482 F.2d 1012 (6th Cir.1973)). As the district court noted, however, there was some ambiguity in the correspondence between the parties as to whether the issue of insurance benefits had actually been settled during the effects bargaining. Because the record discloses there was some ambiguity, we cannot say the arbitrator exceeded his authority in resolving those ambiguities in favor of granting insurance benefits to the laid off employees.

Franklin Electric last argues that the arbitrator's award should be vacated because it violates the express limitation on awards set forth in the CBA at article 5.4: "Any claim or award made in settlement of a grievance shall not exceed 30 days prior to the date of filing of the written grievance." We agree with the district court that this term is not unambiguous and was, therefore, open to arbitral interpretation. Because we cannot say that the arbitrator's interpretation does not take its essence from the CBA, we likewise must uphold the judgment of the arbitrator.

We conclude that the district court's judgment that the arbitrator had jurisdiction to decide the arbitrability questions was correct. We also conclude the issue of insurance benefits was, in this case, arbitrable and that the arbitrator's award draws its essence from the parties' agreements in all respects. Therefore, the judgment of the district court enforcing the arbitrator's award is affirmed.