**INTERNATIONAL BROTHERHOOD OF TEAMSTERS, LOCAL NO. 120, ST. PAUL, MINNESOTA, Plaintiff,**

v.

**UNIVERSITY OF ST. THOMAS, Defendant.**

Civ. No. 3–94–177.

United States District Court,
D. Minnesota,
Third Division.

Oct. 12, 1994.

**347**

Vaughn ("Vaughn"), a former University employee.

**Background**

*I. Parties*

St. Thomas is a private, post-secondary nonprofit educational institution located in St. Paul, Minnesota. Plaintiff Union is the bargaining unit for St. Thomas's building service workers. The Union and St. Thomas are parties to a Collective Bargaining Agreement ("Agreement") effective February 1, 1992, through the present. (*See* Pl.'s Mem. in Supp. of Mot. for J. as a Matter of Law, Ex. C.) Vaughn is a former University Building Service worker and member of plaintiff Union.

*II. Factual Background*

The dispute in this matter arises out of an arbitration proceeding administered by the Minnesota Bureau of Mediation Services pursuant to the parties' Agreement. The subject of the arbitration hearing was a grievance Vaughn filed against St. Thomas contesting her termination. Vaughn claimed her termination violated the parties' Agreement. The materials submitted in arbitration outlined Vaughn's employment history and reasons for her termination. These facts are not disputed.

The materials submitted by the parties demonstrate that Vaughn had a long history of employment problems with St. Thomas. Vaughn provided janitorial services for St. Thomas from August 28, 1989, to April 1, 1993. During this period, Vaughn was routinely cited or informally reprimanded for misbehavior. According to the record, in addition to days in which Vaughn missed work altogether, Vaughn was late at least twenty-two days. (Employer's Ex. No. 2.)[1] Vaughn was also repeatedly found sleeping on the job. St. Thomas documented eleven times in which Vaughn was found sleeping when she was supposed to be working, or times her supervisor, Robert Douglas ("Douglas"), suspected that she had been

Stephen D. Gordon and Paul W. Iversen, Gordon, Miller & O'Brien, Minneapolis, MN, for plaintiff.

Kathryn A. Graves, Moore, Costello & Hart, Minneapolis, MN, for defendant.

**MEMORANDUM OPINION AND ORDER**

KYLE, District Judge.

**Introduction**

This matter comes before the Court on defendant University of St. Thomas's ("St. Thomas") Application to Vacate Arbitration Award and plaintiff International Brotherhood of Teamsters, Local No. 120's ("Union") Motion for Judgment as a Matter of Law confirming the arbitration award. St. Thomas requests that the Court, pursuant to 9 U.S.C. § 10(d), vacate that portion of the December 6, 1993, arbitration award which directed St. Thomas to reinstate Linda

1. "Employer Ex." refers to exhibits attached to Defendant's Memorandum of Law in Support of Application to Vacate Arbitration Award. These exhibits were originally submitted to the Arbitration Board on October 20, 1993.

sleeping when he could not find her in her assigned work area. (*Id.* No. 4.) After finding Vaughn asleep during her shifts, Douglas sent her written notice informing her that sleeping on the job was unacceptable. (*Id.* No. 3.) Despite this written warning, Vaughn continued to be found sleeping on the job. (*Id.* No. 4.)

In addition to tardiness and sleeping on the job, the record also outlines instances in which St. Thomas either reprimanded Vaughn or noted its dissatisfaction with her attitude and job performance. (*See* Douglas Aff.) St. Thomas documented several occasions of insubordination, delinquency, and failing to follow instructions. On one of these occasions, Vaughn was sent home for refusing to do her assigned cleaning tasks, for doing other tasks purposefully slowly, and for refusing to respond to her supervisor's questions. (*Id.* No. 14.) Vaughn was given a formal warning notice after this incident. This notice stated that "[y]our [Vaughn] behavior was insubordination and any continuation of such behavior will not be tolerated. Any additional incidents of this nature will provide me with no alternative but to terminate your employment immediately." (*Id.*)

Finally, Vaughn's employment records reflect a history of not following University procedures. St. Thomas required its workers to wear pagers while working so that a supervisor could contact an employee during the employee's shift. Despite repeated warnings, including a written notice, Vaughn did not regularly wear her pager. (Employer's Ex. No. 6.) St. Thomas documented eleven occasions in which Vaughn was found not wearing her pager. (*Id.* No. 7.) Vaughn also missed a significant number of work days due to illness, injury and other personal reasons. (*Id.* No. 2.) Vaughn failed to follow University rules regarding reporting and verifying these situations. (Douglas Aff. ¶¶ 6–13.) On several occasions, Vaughn simply did not come to work or had to be sent

home for failing to follow these rules. (*Id.;* Employer's Ex. No. 12.) At least one of these occasions resulted in a formal, written warning letter.[2]

Five days after this second notice was sent out, Vaughn's supervisor found her asleep in the women's rest room. The lights were off in the room. The time was 1:50 a.m. and Vaughn's break ended at 1:15 a.m. That afternoon St. Thomas sent Vaughn a letter terminating her employment. The stated basis for the termination included the final incident of sleeping on the job, as well as other incidents of sleeping on the job, insubordination, tardiness, poor job performance, poor work attitude and unexcused absences. (Douglas Aff. ¶¶ 4, 5).

### III. Procedural Background

The Union filed a grievance contesting Vaughn's termination on April 6, 1993. (Pl.'s Mem. in Supp. of Mot. for J. as a Matter of Law, Ex. B.) The grievance was not resolved between St. Thomas and the Union and was submitted to the parties' Arbitration Board ("Board" or "Arbitrator") pursuant to the Agreement. The arbitration hearing took place on October 20, 1993. The Board consisted of a Union member, a University member and a neutral chair.

The Board issued its decision on December 6, 1993. (*Id.,* Ex. D.) The Board determined that St. Thomas had not shown a "legitimate business reason" for terminating Vaughn as required under the Agreement. (*Id.* at 2–3.) The Board subsequently ordered Vaughn reinstated. The Board denied Vaughn's request for back pay.

St. Thomas has not complied with the Board's decision and has not reinstated Vaughn. St. Thomas contends that the Board exceeded its authorized powers under the Agreement and that its decision should be set aside. St. Thomas accordingly filed a timely Application to Vacate the Arbitration Award in state court. The Union removed

---

**2.** This warning letter related to an incident which occurred in March, 1993. According to the letter, Vaughn was scheduled to work March 18. Vaughn did not come to work, but called in sick. Vaughn was also scheduled to work the next evening. Vaughn did not come to work,

call in sick, or provide any reason for her absence. The last sentence of the letter stated that "[a]ny further incidents of this nature will force [the supervisor] to apply more severe disciplinary procedures up to and including your termination." (Employer's Ex. 12.)

the Application to this Court. Following St. Thomas's Application to Vacate Arbitration Award, the parties submitted the case for Court trial and the Union moved for judgment as a matter of law. The parties agree that there are no material facts at issue in this case and have submitted it to the Court for final resolution.

This Court has original jurisdiction over this matter as conferred by 28 U.S.C. §§ 1331 and 1337, 9 U.S.C. § 1 *et seq.* and 29 U.S.C.A. § 185.

## Discussion

### I. Standard of decision

 The Court's authority for vacating an arbitration award derives from 9 U.S.C.A. § 10(d). This statute provides, in pertinent part, that:

> the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration ... [w]here the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C.A. § 10(d) (1970 & Supp.1994). The standard of review used in applying this statute is extremely deferential. The role of the reviewing court is limited to determining whether the arbitrator's decision draws its essence from the parties' collective bargaining agreement. *United Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960); *Franklin Elec. Co. v. International Union, UAW,* 886 F.2d 188, 192 (8th Cir. 1989). Thus courts are not authorized to reconsider the merits of an arbitration award. *United Paperworkers Int'l Union v. Misco, Inc.,* 484 U.S. 29, 36–37, 108 S.Ct. 364, 370, 98 L.Ed.2d 286 (1987).

 This deferential standard of review does not, however, amount to a grant of unlimited power to the arbitrator. Because the arbitrator's award must draw its essence from the bargaining agreement, the arbitra-

tor is not free to dispense his or her own brand of justice. *Enterprise Wheel & Car,* 363 U.S. at 597, 80 S.Ct. at 1361. Thus where the arbitrator bases her decision on some body of thought, or feeling, or policy, or law that is outside the contract, the reviewing court must vacate or modify that decision. *See St. Louis Theatrical Co. v. St. Louis Theatrical Brotherhood Local 6,* 715 F.2d 405, 407 (8th Cir.1983); *Harry Hoffman Printing, Inc. v. Graphic Communications Int'l Union, Local 261,* 950 F.2d 95, 98 (2d Cir.1991).

### II. Analysis

The parties do not dispute the facts or law applicable to this case. The narrow issue before the Court is whether the Arbitration Board's order to reinstate Vaughn drew its essence from the Agreement.

The Board derives its authority from Article Four of the Agreement. This Article provides that if St. Thomas and the Union are unable to settle a grievance, that grievance will be referred to the Board and that "a majority decision of the Board of Arbitration shall be final and binding upon both the Union and the Employer." (Pl.'s Mem. in Supp. of Mot. for J. as a Matter of Law, Ex. C. at 7–8.) The issue placed before the Board was whether St. Thomas had complied with the Agreement's Discipline and Discharge provisions when it terminated Vaughn. Those provisions state, in pertinent part, that:

> The Employer shall have the ability to discharge an employee for legitimate business reasons and shall give at least (1) one warning notice in writing to the employee affected and the Union.

(*Id.* at 6.)

 In interpreting the Agreement's Discipline and Discharge provision, the Board concluded that in order for the discharge to stand, it must find (1) that sufficient and valid warning notice had been made to the grievant and (2) that the discharge was for legitimate business reasons.[3] (*Id.,* Ex. D at

---

**3.** The Discipline and Discharge provision of the Agreement also allows discharge without notice for dishonesty or a major violation of work rules.

(Pl.'s Mem. in Supp. of Mot. for J. as a Matter of Law, Ex. C. at 6.) Both parties and the Board

2.) Prior to her termination, Vaughn had been given several warning letters for various forms of misconduct. (*Id.*) One of these letters, dated March 26, 1993, was for unexcused absence from work. In this letter, the supervisor stated that "[t]his failure to follow instructions for being granted an excused absence will not be tolerated again. Any further incidents of this nature will force me to apply more severe disciplinary procedures, up to and including your termination." (Employer's Ex. No. 12.) The Board determined, and the Court agrees, that this letter was sufficient to satisfy the Agreement's warning notice requirement for Vaughn's April 1, 1993 discharge. (Pl.'s Mem. in Supp. of Mot. for J. as a Matter of Law, Ex. D. at 2.) Thus the Board concluded that the discharge was proper if sleeping on the job was a "legitimate business reason" for discharge. (*Id.*)

█ The Board determined that sleeping on the job was not a legitimate business reason for discharging Vaughn. (*Id.*) The Board divided its analysis into two stages. First, the Board determined that sleeping on the job normally qualified as a "legitimate business reason" for termination. (Pl.'s Mem. in Supp. of Mot. for J. as a Matter of Law, Ex. D. at 2.) The Board next determined that such conduct was not legitimate in this case because (1) St. Thomas listed eleven separate instances where Vaughn's supervisors either found her sleeping or suspected her of sleeping, but did not issue warning letters; (2) there was testimony that St. Thomas did not fire other employees for one instance of sleeping on the job; and (3) St. Thomas did not show consistent treatment of violations and notify the Union and employees in writing that sleeping on the job was an offense serious enough to warrant discipline. (*Id.*) The Board concluded that before misconduct could be the basis for discipline, St. Thomas had to show consistent treatment and provide this written notice to its employees and the Union. (*Id.*)

Although this Court recognizes the deference afforded to an arbitrator's decision, the Court also recognizes that it must set aside

that decision if the arbitrator exceeded the scope of its authority granted in a collective bargaining agreement. That is precisely the circumstance with which the Court is faced. This is not a case in which the Board's interpretation or application of the Agreement, resolution of the merits, or use of the principles of contractual interpretation are in question. This is a case in which the Board simply stepped outside the essence of the Agreement to reach its decision.

The Board made no reference to the Agreement to justify its three additional conditions. They were not derived from the Agreement's terms. No language in the Agreement suggests the parties agreed St. Thomas would give written notice to the Union and the employees before conduct would be a "legitimate business reason" for discipline. Similarly, no language in the Agreement suggests the employer agreed to terminate an employee every time it had a legitimate reason for doing so; or conversely that a reason for termination could not be "legitimate" unless other employees who engaged in that conduct were always fired. These conclusions are the necessary implications of the Board's decision. Thus these must be justified from within the parties' Agreement in order for the decision to stand.

The Court finds that the parties' Agreement cannot justify such a tortured construction of "legitimate business reason." The Agreement's language directed the Arbitrator to determine whether a warning letter was issued and whether the conduct was a legitimate reason for discharge. The Arbitrator found that notice was given and that sleeping on the job was normally a legitimate reason for discharge. The Arbitrator then determined that the additional requirements must be met before such conduct would be legitimate in this instance. Although the Arbitrator was entitled to use contract principles in construing this language, that is not what occurred in this case. Nothing in the Agreement gave the Arbitrator the power to impose the additional warning requirements.[4]

agreed that Vaughn's conduct did not constitute dishonesty or a major violation of work rules.

4. Notably, the arguments, briefs and accompanying materials for both parties demonstrate that the Agreement was the product of extensive ne-

Similarly, nothing in the Agreement's language, industry practice, or the parties' negotiations supports the additional requirement that employees must be consistently fired for the conduct before such conduct is a "legitimate business reason" for discharge. These requirements clearly came from outside the Agreement. Thus the Arbitrator was not merely interpreting what the parties meant by "legitimate" in the Agreement. The Arbitrator was imposing his own, extraneous conditions for "legitimate."

The Arbitrator's own notions of fairness or due process may arguably justify the additional requirements to "legitimate." However, the parties did not bargain for the Arbitrator's notions of fair play and due process. The parties bargained for the terms of the Agreement and for the Arbitrator to apply those terms as written, not to supply new ones. *See Harry Hoffman Printing, Inc. v. Graphic Communications Int'l Union, Local 261*, 950 F.2d 95, 98–99 (2d Cir.1991) (explaining that an arbitration panel did not have the power to impose a notice requirement on an employer since there was no language which indicated the parties intended such, and that the panel's decision must be vacated because the panel based its decision on its own notions of due process, not on the terms of the contract); *St. Louis Theatrical Co. v. St. Louis Theatrical Brotherhood Local 6*, 715 F.2d 405, 409 (8th Cir.1983) (holding that an arbitration award must be vacated because "the arbitrator's opinion reflected the arbitrator's efforts to balance the equities of the situation, rather than to interpret and apply the agreement.")

Based on the materials presented, it is clear that the Arbitrator's award must be set aside. In reaching this conclusion, the Court acknowledges the great deference to be accorded an arbitrator's interpretation and construction of the provisions of a collective bargaining agreement. The Court does not depart from this well established doctrine. Instead, the Court finds that the Arbitrator's decision did not draw its essence from the

gotiations. The Agreement contains clear and explicit language when notice or warning letters are required. A letter is in fact a prerequisite to considering "legitimacy" in the Discipline and Discharge provision in the first instance. Thus

parties' Agreement and for that reason must be vacated.

### Conclusion

On all the files, records and proceedings herein, and the arguments and memoranda of the parties, **IT IS ORDERED** that the Defendant's Application to Vacate Arbitration Award (Doc. No. 6) is **GRANTED**; Plaintiff's Motion for Judgment as a Matter of Law (Doc. No. 8) is **DENIED**; that provision of the Arbitrator's award directing the reinstatement of Linda Vaughn as an employee of St. Thomas is **VACATED**; this action is **DISMISSED WITH PREJUDICE.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

the parties' course of negotiating further suggests that the Arbitrator stepped outside the Agreement when it construed the Discipline and Discharge provision.