199 P.3d 484 (2009)
CITY OF YAKIMA, Respondent,
v.
YAKIMA POLICE PATROLMANS ASSOCIATION and Michael Rummel, Appellants.
No. 26799-7-III.
Court of Appeals of Washington, Division 3.
January 8, 2009.
*486 James Michael Cline, Cline & Associates, Seattle, WA, for Appellants.
Rockney Leroy Jackson, Menke Jackson Beyer & Elofson LLP, Yakima, WA, for Respondent.
KORSMO, J.
¶ 1 Appellant Yakima Police Patrolman's Association (Union) seeks reversal of a superior court order vacating an arbitration award rendered during the grievance procedure following Michael Rummel's termination of employment with the City of Yakima (City). The trial court concluded that the arbitrator failed to properly apply the terms of a Last Chance Agreement between Mr. Rummel and the City. We agree and affirm the ruling below.

FACTS
¶ 2 Mr. Rummel was employed by the City as a police officer. In August 2002, officers stopped Mr. Rummel for driving while intoxicated. He was charged with driving under the influence of alcohol and later pleaded guilty to first degree negligent driving.
¶ 3 Following an internal investigation, Mr. Rummel received a 350-hour unpaid suspension and signed a "Last Chance Employment Agreement" (LCA). The Agreement required him to "comply with any and all Yakima Police Department Policy and Procedures and Yakima Police Civil Service Rules."
¶ 4 In October 2004, the manager of the City's 911 call center reported to the police chief that Mr. Rummel called the center to speak with call-taker Stacey Unglesby. Mr. Rummel and Ms. Unglesby were in a relationship. Mr. Rummel was on the telephone with Ms. Unglesby for 30 minutes and was distraught and crying. He also made comments suggesting he was suicidal. The call led Mr. Rummel's supervisor, Captain Greg Copeland, to meet with Mr. Rummel. He told Captain Copeland that he was having personal problems. Captain Copeland arranged for a mental health professional to meet with Mr. Rummel.
¶ 5 On October 31, police officers were dispatched to investigate a reported incident of domestic violence between Mr. Rummel and Ms. Unglesby. When officers entered Mr. Rummel's apartment, they observed him loading a shotgun. The next day, Captain Copeland ordered Mr. Rummel not to call or contact Ms. Unglesby while she was at work.
¶ 6 On December 10, Captain Copeland learned from Ms. Unglesby that Mr. Rummel had called her at work. Captain Copeland obtained a transcript of the call and initiated an internal investigation. Captain Copeland concluded that Mr. Rummel had disobeyed a direct order by calling Ms. Unglesby. Mr. Rummel was placed on administrative leave and ordered to undergo a fitness for duty evaluation with psychiatrist, Dr. Kathleen Decker.
¶ 7 Dr. Decker diagnosed Mr. Rummel as suffering from severe and recurrent major depression and alcohol abuse with a high degree of disturbance. Dr. Decker determined Mr. Rummel had a treatable condition and ordered him to abstain from using alcohol. She also recommended that he remain off-duty until his symptoms stabilized.
¶ 8 On February 17, 2005, Dr. Decker reevaluated Mr. Rummel and determined he was ready to return to work. Dr. Decker found his depression was in partial remission and his alcohol abuse was in remission. She recommended that Mr. Rummel continue taking anti-depression medication indefinitely, undergo 90 days of random urinalysis testing for alcohol, and undergo treatment if any test was positive.
¶ 9 On April 1, Mr. Rummel was accused of using his police badge to gain entry into a bar without paying the cover charge. After an internal investigation, it was determined that Mr. Rummel used his badge to enter the bar for personal reasons and that he had violated employer policy prohibiting police officers from using their badge for monetary gain.
*487 ¶ 10 On May 2, Captain Copeland recommended that Mr. Rummel be terminated. On June 2, Mr. Rummel was provided with a Notice of Pre-Termination Hearing, which stated that it was anticipated Mr. Rummel would be terminated for violating the LCA by contacting Ms. Unglesby at work and for the improper use of his position.
¶ 11 On June 10, the district court entered a one-year Order for Protection From Unlawful Civil Harassment against Mr. Rummel. The protection order restrained Mr. Rummel from being within 500 feet of Ms. Unglesby's residence and from entering her place of employment when she was present.
¶ 12 On June 16, the pretermination hearing was held. Mr. Rummel accepted responsibility for his telephone call to Ms. Unglesby and said that he had entered the bar only to "remove his friends." On July 1, Captain Copeland advised Mr. Rummel that he was being terminated and had until July 5 to resign. Mr. Rummel refused to resign and was given a Notice of Termination effective on July 7. The notice stated:
By your actions in violating Captain Copeland's directive to not contact Ms. Unglesby while on duty and by using your police badge as a sign of authority to gain a waiver of the cover charge at Johnny's Nightclub, you have violated provisions of the Yakima Police Department Rules and Yakima Civil Service Rules and therefore have violated the terms of the November 2002 Last Chance Agreement. As set forth in the Last Chance Agreement, the appropriate penalty for these new infractions is termination.
Arbitrator's Order at 24.
¶ 13 On July 25, the Union filed a grievance on behalf of Mr. Rummel alleging that the City did not have just cause for his termination. The grievance was denied and submitted to arbitration pursuant to the collective bargaining agreement between the City and the Union.
¶ 14 On December 5, Ms. Unglesby received a one-year Order of Protection from the superior court which found that Mr. Rummel committed domestic violence and ordered him to not come within 500 feet of Ms. Unglesby's residence or place of employment.
¶ 15 On January 5, 2007, the arbitrator issued his Opinion and Award to reinstate Mr. Rummel. The arbitrator found that Mr. Rummel's call to Ms. Unglesby was in violation of the order not to contact her at work, but was not sufficient to establish the call was a deliberate violation of the order he received from Captain Copeland. Instead, the arbitrator determined the call was
an isolated occurrence which lasted only one minute, and was in the context of an emotional breakup of a long-term relationship. It was not a significant disturbance of the 911 call center such as had occurred during October 2005[sic], and which led to the order not to call her while she was working. Moreover, the Grievant was, as Chief Granato apparently understood, suffering from severe psychological problems when he made the brief phone call to his girlfriend at work.
Arbitrator's Order at 37-38.
¶ 16 The arbitrator also concluded that Mr. Rummel did not improperly use his position when he entered the bar to remove his friends. Arbitrator's Order at 38-40. The arbitrator went on to find that the termination actually was sought in retaliation for the Union's refusal to withdraw an unfair labor practice claim. Determining that this was not a proper reason for termination, the arbitrator ordered that Mr. Rummel be reinstated. Arbitrator's Order at 40-43.
¶ 17 On January 25, 2007, the City filed a petition for a writ of certiorari in the superior court. The superior court accepted review and found the arbitrator erred when he determined that Mr. Rummel did not intentionally call Ms. Unglesby. The superior court stated Mr. Rummel's case rested on application of the terms of the LCA and there was no contention that his telephone call to Ms. Unglesby was accidental or inadvertent. Based on these reasons, the superior court overturned the arbitrator's decision and upheld the termination of Mr. Rummel's employment. The Union appeals.

*488 ANALYSIS
¶ 18 The Union contends the superior court erred by vacating the arbitrator's award and concluding that the City had properly terminated Mr. Rummel's employment. It argues the court should have treated the arbitrator's decision as final and binding and that the court failed to apply an extremely deferential review to the arbitrator's decision. It also argues the superior court disregarded the arbitrator's findings and conclusions, a task that belongs only to the arbitrator. The City responds that the arbitrator exceeded his authority and jurisdiction by altering the terms and conditions of the LCA. It argues that in such circumstances, the arbitrator is owed no deference by the superior court.
¶ 19 "Review of an arbitration decision under the constitutional writ of certiorari is limited to whether the arbitrator acted illegally by exceeding his or her authority under the contract." Clark County Pub. Util. Dist. No. 1 v. Int'l Bhd. of Elec. Workers, 150 Wash.2d 237, 245, 76 P.3d 248 (2003). The purpose of the writ is to enable a court to determine whether the proceedings were within the lower tribunal's jurisdiction and authority. Id.
¶ 20 Labor arbitration awards are afforded great deference. United Steelworkers of Am. v. Am. Mfg. Co., 363 U.S. 564, 568, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960). When reviewing an arbitration proceeding in a labor dispute, courts will not reach the merits of the case. Clark County, 150 Wash.2d at 245, 76 P.3d 248. The common law arbitration standard requires this extremely limited review. Id. The arbitrator is the final judge of both the facts and the law, and "no review will lie for a mistake in either." Carey v. Herrick, 146 Wash. 283, 292, 263 P. 190 (1928).
[A]n arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement.
United Steelworkers of Am. v. Enter. Wheel & Car Corp., 363 U.S. 593, 597, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). So long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, the fact that a court is convinced he committed serious error does not suffice to overturn his decision. E. Associated Coal Corp. v. United Mine Workers of Am. Dist. 17, 531 U.S. 57, 62, 69, 121 S.Ct. 462, 148 L.Ed.2d 354 (2000). When parties voluntarily submit to binding arbitration, they trade their right to appeal an arbitration award for a relatively speedy and inexpensive resolution to their dispute. Clark County, 150 Wash.2d at 247, 76 P.3d 248. Thus, binding arbitration awards are not subject to being vacated by courts, except in very limited circumstances. Id.
¶ 21 Here, in lieu of termination, the LCA required Mr. Rummel to comply with the following relevant terms and conditions: "i. Employee shall comply with any and all Yakima Police Department Policy and Procedures and Yakima Police Civil Service Rules." City Ex. 6. At the time of Mr. Rummel's termination, the City alleged that he had violated provisions of the General Rules and Regulations of the Civil Service Commission for Police and Fire Employees of the City of Yakima (General Rules) Section 1b and l, and the Yakima Police Department Policies and Procedures (Policies and Procedures) Section 7.03.00 requiring him to comply with "the order or direction of a supervisor" and "promptly obey any lawful orders of a superior officer." The central issue here, then, is whether the arbitrator deviated from his designated authority or from the issues submitted for arbitration in rendering his award.
¶ 22 The LCA provided a grievance procedure in the event of Mr. Rummel's termination. This provision stated in relevant part that:
In the event that the Employee fails to comply with this Agreement and his employment with the City is terminated, the Employee, to the fullest extent permitted by law, expressly waives and releases any and all rights to appeal, grieve, or otherwise challenge the appropriateness of his *489 termination under this Agreement; provided, however, that the Employee retains the right to appeal/grieve the City's determination that he did not comply with the terms and conditions of this Agreement. Any such appeal/grievance shall be made in accordance with the Police Civil Service Rules or the grievance process provided in Article 7 of the applicable Collective Bargaining Agreement between the City and the [Union].
City Ex. 6.
¶ 23 Article 7 of the Collective Bargaining Agreement identified arbitration as the final step in the grievance process and stated in pertinent part:
The arbitrator's decision shall be final and binding but the arbitrator shall have no power to alter, modify, add to or subtract from the terms of this agreement. The cost of the arbitrator shall be borne equally between the City and the Association. The City and Association will pay their own remaining costs of arbitration, including attorneys' fees, regardless of the outcome.
Joint Ex. at 8. No Washington court has considered a challenge to an arbitration award in the context of a last chance agreement. Federal courts, however, have examined the precise issue here.[1]
¶ 24 In Coca-Cola Bottling Co. v. Teamsters Local Union No. 688, 959 F.2d 1438, 1439 (8th Cir.1992), the union and employer entered into an agreement, which reinstated an employee on the condition that he would not commit any "offense of a similar and/or like nature in violations [sic] of Category A Rules and Regulations." After the employee violated several category A rules, he was terminated pursuant to the agreement. Id. The union then filed a grievance and the matter was submitted to arbitration. Id. The arbitrator found that while the employee had committed the rules violation, the discharge was unwarranted. Id. The district court vacated the award, however, and the Eighth Circuit affirmed. Id. at 1442. The Court held that "the arbitrator went outside the last chance agreement by rejecting the bargained-for remedy, notwithstanding his determination that a category A rules violation, a triggering event, had occurred." Id. at 1441. The Court emphasized that the arbitrator's determination of whether the "triggering event" had occurred deserved deferential review, but that once the arbitrator determined that the triggering event had occurred, he was obliged to follow the language of the last chance agreement. Id. at 1441-1442.
¶ 25 Similarly in Tootsie Roll Industries, Inc. v. Local Union No. 1, 832 F.2d 81, 82 (7th Cir.1987), the union and employer agreed to a last chance agreement. The agreement stated that if the employee failed to meet a specified attendance level, she would be terminated "and the Union waives any right to file or pursue a grievance or other claim on her behalf." Id. After the employee missed work as a result of car problems and illness, she was terminated. Id. An arbitrator ordered the employee reinstated finding that her absences were the result of "extenuating circumstances." Id. at 83. The district court vacated the award, and the Seventh Circuit affirmed. Id. at 85. The Court explained that once the arbitrator determined that the employee violated the attendance requirements of the last chance agreement, "the waiver clause of the agreement renders [the Union]'s grievance not arbitrable." Id. at 84. The Court emphasized that even though the terms of the last chance agreement might be "very harsh" or "unreasonable," "the parties agreed to it and the contract is exactly what it purports to be  a `last chance' agreement." Id.
¶ 26 While an arbitrator's view of the issues submitted to him receives great deference by the courts, an arbitrator is confined to the interpretation and application of the parties' agreement. Enterprise Wheel, 363 U.S. at 597, 80 S.Ct. 1358. Here, the arbitrator determined that the issue before him was whether the City was justified in terminating Mr. Rummel based on the LCA *490 and Mr. Rummel's alleged insubordination and misuse of his authority. Arbitrator's Order at 35-36. But allowing the arbitrator the authority to undertake a "just cause" analysis as to the appropriateness of Mr. Rummel's termination was not what the parties had agreed to in the terms of the LCA. The LCA only provided Mr. Rummel with the right to grieve the City's determination as to whether he had "complied with the terms and conditions" of the agreement.
¶ 27 The arbitrator found that Mr. Rummel had engaged in insubordination by failing to follow his supervisor's directive to not contact Ms. Unglesby, but then found that any insubordination was not "deliberate" and thus could not be considered a violation of any policy or rule. The arbitrator reached this result by considering the general civil service disciplinary rules which permit discipline when an officer deliberately or willfully violates an order. See General Rules, Rule XIII Disciplinary Actions (Arbitrator's Order at 25). However, the LCA did not incorporate the disciplinary rules. Rather, the parties had already agreed that violation of the LCA could lead to termination. Whether or not such action was justified or harsh or unreasonable was irrelevant. Tootsie Roll, 832 F.2d at 84. It was what the parties had agreed to in 2002.
¶ 28 Therefore, whether or not Mr. Rummel's act was "deliberate" under Rule XIII was not a consideration that could be made by the arbitrator in his interpretation of the rules and policies that Mr. Rummel was subject to in the LCA. The arbitrator was only given the task of determining whether Mr. Rummel had violated the rules and policies identified in his LCA. The arbitrator had no authority to determine whether termination was inappropriate given the circumstances. Any conclusion by the arbitrator that Mr. Rummel's termination was unjust was beyond his authority and therefore erroneous.
¶ 29 With respect to the bar incident, the arbitrator found that Mr. Rummel had not misused his position when he "flashed" his badge and entered the bar to remove two friends. That factual determination is within the scope of the arbitrator's authority and is not reviewable by any court. The arbitrator also determined that Mr. Rummel intentionally called Ms. Unglesby at work and that he had been ordered not to do so by Captain Copeland. Policies and Procedures 7.03.00 requires that officers "obey any lawful orders of a superior officer" and that refusal to do so would be considered "insubordinate." Thus, when the arbitrator made the findings that Mr. Rummel had deliberately called Ms. Unglesby at work after being ordered not to do so, the violation of § 7.03.00 was established. Under the terms of the LCA, Mr. Rummel was in violation and could be terminated.
¶ 30 If the arbitrator had merely made a mistake about the applicable law, the courts would still have to uphold the arbitration order even though it was erroneous. Clark County, 150 Wash.2d at 245, 76 P.3d 248. Here, however, the arbitrator went beyond the agreement and tried to determine whether the termination was justified. In doing so, we believe the arbitrator exceeded his authority and, accordingly, we believe that the superior court properly granted the writ of certiorari in overturning the ruling. Similarly, we believe the argument that the termination was sought for ulterior motives likewise was beyond the scope of the arbitrator's authority. The LCA permitted arbitration of the issue of whether the agreement had been violated. Whether the LCA should have been enforced or not and the reasons for seeking enforcement were beyond the scope of the arbitrator's powers. Thus, the trial court was correct when it overturned the arbitration order.
¶ 31 The Union also contends that it is entitled to attorney fees for the proceedings in the trial court and on appeal to this Court if it prevails in upholding the arbitrator's award. See Br. of Appellant at 39. In light of our conclusion that the arbitrator was properly reversed, we need not further analyze the claim.
¶ 32 Affirmed.
WE CONCUR: KULIK, A.C.J., and BROWN, J.
NOTES
[1] Washington courts have looked to federal case law for guidance in analyzing labor disputes. Clark County, 150 Wash.2d at 246, 76 P.3d 248.